## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNY MILMAN and ELLEN THOMAS, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | Case No: |
| | | Judge: |
| Plaintiffs, | ) ) | Magistrate Judge: |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| THERMOS L.L.C., | ) ) ) | |
| Defendant. | ) | |

### CLASS ACTION COMPLAINT

Plaintiffs Jenny Milman and Ellen Thomas ("Plaintiffs") by and through their undersigned attorneys, individually and on behalf of all others similarly situated, allege the following upon personal knowledge as to their own acts and, as to all other allegations, upon information and belief, and upon investigation by counsel:

### NATURE OF THE ACTION

1.     This case is about supposedly "leak-proof" bottles that actually leak. Defendant manufactures two different types of "leak-proof" bottles, intended for use by young children: the Foogo® Vacuum Insulated Straw Bottle (the "Vacuum Insulated Bottle") and the Foogo® Plastic Straw Bottle (the "Plastic Bottle") (collectively the "Bottles"). Defendant consistently advertises the Bottles as being "leak-proof." Undisclosed by Defendant to Plaintiffs and the Class and therefore unknown to Plaintiffs or the Class, the Bottles actually have a tendency to leak, and are thus not "leak-proof" as advertised by Defendant. Defendant's uniform acts and omissions in connection with the development, marketing and sale of the Bottles violates consumer protection laws, breaches Defendant's express warranties to Plaintiffs and the Class, and constitutes unjust enrichment.

2.     Defendant has consistently advertised the Bottles as being "leak-proof."  In fact, on Defendant's website (through which consumers can purchase the Bottles) and on other websites selling the Bottles (such as Amazon.com), the Bottles are referred to as the Foogo® Vacuum Insulated **Leak-Proof** Straw Bottle  and the Foogo® Plastic **Leak-Proof** Straw Bottle.  Thus, the very name of the Bottles contains Defendant's deceptive claim that the Bottles are "leak-proof."

3.     The Bottles' packaging – which is viewed by every person who purchases a Bottle from a store – also advertises the Bottles as "leak proof" on both the front and back of "hang tags" that are placed on each Bottle available for sale.

4.     However, the supposedly "leak-proof" Bottles are anything but "leak-proof."

5.     Defendant specifically markets the Bottles to parents of infants and young children, insofar as such parents value a bottle designed to prevent leaks when young children knock bottles over, throw them, spill them, or turn them upside down.  Thus, a truly "leak-proof" bottle is particularly valuable to the parents of a young child and such representations are material to a purchase decision.  The Bottles range in cost from $6.00 to $16.99, while similar non-"leak-proof" bottles cost as little as $2.50 or less.

6.      The Bottles leak from both the straw and the gap between the lid and the straw. Further, because the "push button lid" is easily triggered, the Bottles often pop open, exposing the leaking straw and straw area.  These are not leaks associated with years of continuous use – they are instead inherent in the design of the Bottles.

7.     Defendant has employed numerous methods to convey to consumers its deceptive claims regarding the supposed "leak-proof" nature of the Bottles, including on its website, on other websites such as Amazon.com, and on the products' packaging, insofar as the hang-tags present on every Bottle sold in stores advertise the Bottles as being "leak-proof."

8.     As a result of Defendant's deceptive claims, consumers – including Plaintiffs and the other members of the Class – purchased a product that is advertised as being immune to leaks but in reality leaks regularly and copiously, and thus Plaintiffs and other members of the Class have suffered an ascertainable loss.  Moreover, Defendant has been able to charge a significant premium for the Bottles over other, traditional, non-"leak-proof" bottles designed for use by children.

9.     Plaintiffs bring this lawsuit against Defendant on behalf of themselves and other similarly situated consumers who purchased the Bottles in order to (a) halt the dissemination of Defendant's deceptive advertising message, (b) correct the false and misleading perception Defendant has created in the minds of consumers, and (c) secure redress for consumers who have purchased one or more of the Bottles.  Plaintiffs, on behalf of themselves and all others similarly situated, allege violations of the New Jersey Consumer Fraud Act, New York General Business Law § 349, as well as breach of express warranty, and unjust enrichment.

## JURISDICTION AND VENUE

10.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).   The aggregate claims of Plaintiffs and the proposed Class members exceed $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between at least one member of the proposed Class and Defendant.

11.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this district and because Defendant:

a.     has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

b.     does substantial business in this district; and

c.    is subject to personal jurisdiction in this district.

**PARTIES**

*Plaintiffs*

12.    Plaintiff Jenny Milman is a citizen of New Jersey, residing in Hoboken, New Jersey.  Ms. Milman was exposed to and saw Defendant's material deceptive labeling and advertising claims, purchased the premium-priced Foogo® Vacuum Insulated Straw Bottle and the premium-priced Foogo® Plastic Straw Bottle and, as a result of the material deceptive claims, suffered injury in fact and lost money.

13.    On or about February 3, 2013, Ms. Milman purchased one Vacuum Insulated Bottle via Amazon.com at the price of $16.99.  On or about February 22, 2013, Ms. Milman purchased one more Vacuum Insulated Bottle at the price of $16.93, and two Plastic Bottles at the price of $6.00 per bottle.  Ms. Milman was specifically seeking to purchase a leak-proof bottle for her infant son's use.  Had the Bottles not been advertised as being "leak-proof," Ms. Milman either would not have purchased the Bottles, or would not have paid as much as she did for the Bottles .

14.    Plaintiff Ellen Thomas is a citizen of New York residing in New York, New York. Ms. Thomas was also exposed to and saw Defendant's material deceptive labeling and advertising claims, purchased the premium-priced Foogo® Vacuum Insulated Straw Bottle, and, as a result of the material deceptive claims, suffered injury in fact and lost money.

15.    On or about June 6, 2011, Ms. Thomas purchased two Vacuum Insulated Bottles via Amazon.com at the price of $14.99 per bottle.  Ms. Thomas was specifically seeking to purchase a leak-proof bottle for her then-infant son's use.  Had the Bottles not been advertised as being "leak-proof," Ms. Thomas either would not have purchased the Bottles, or would not have paid as much as she did for the Bottles.

*Defendant*

16. Thermos L.L.C. is a Delaware limited liability company. Its corporate headquarters are located at 475 North Martingale Road, Suite 1100, Schaumburg, Illinois, 60173.

17. Plaintiffs are informed and believe, and thus allege, that at all times herein, Defendant's agents, employees, representatives, and/or partners were acting within the course and scope of such agency, employment, and representation, on behalf of such limited liability corporation.

## FACTUAL ALLEGATIONS

18. Defendant describes itself as a "leading manufacturer worldwide of insulated food and beverage containers, children's lunch kits and other innovative consumer products." *See* "About Thermos," *available at* http://www.thermos.com/About.aspx, last visited October 2, 2013.

19. The Foogo® line of Defendant's products is designed for use by infants and young children, and includes "sippy cups" and food jars as well as the Bottles. *See* "Better Fresh Than Sorry," *available at* http://www.thermos.com/foogo.aspx, last visited October 2, 2013.

20. The Bottles are available in several different colors and designs, but all of them are referred to on the Thermos website as the Foogo® Vacuum Insulated Leak-Proof Straw Bottle or the Foogo® Plastic Leak-Proof Straw Bottle.

21. The following pictures are representative of the Vacuum Insulated Bottles:



22.    The following pictures are representative of the Plastic Bottles:



23.    All of the Bottles (both Vacuum Insulated and Plastic) are equipped with a "hygienic push button lid."  When the large button is pushed, the lid opens, exposing the "pop-up silicone straw."  *See, e.g.*, "Blue Foogo® Vacuum Insulated Leak-Proof Straw Bottle," *available at*  http://www.thermos.com/products/blue-foogo-vacuum-insulated-leak-proof-straw-bottle.aspx, last visited October 2, 2013.

24. The following drawing and photograph depict the lid and straw design of every Bottle:



***Defendant's Deceptive Advertising and Marketing***

25. Defendant's deceptive advertising of the Bottles as "leak-proof" takes two primary forms: online and in-store advertising. Online advertising appears on the Thermos website, where the Bottles are available for purchase, as well as other websites where the Bottles are sold,

such as Amazon.com.  In-store advertising appears in the many baby and children's supplies stores where the Bottles are sold.

26.    Defendant's online advertising for the Foogo® Vacuum Insulated Leak-Proof Straw Bottle and the Foogo® Plastic Leak-Proof Straw Bottle begins with the products' very names as they appear on Defendant's website: "***Leak-Proof***."   By naming the Bottles as "Leak-Proof," Thermos leads consumers to believe that the Bottles will not leak under any circumstances.

27.    Further, Defendant consistently represents in its online advertising that the Bottles are designed to endure falls and spills without leaking.   A video on the Thermos website advertising the Foogo® line of products depicts a Foogo® "sippy cup" falling from a high chair to the floor, and states:

**LEAK-PROOF, WORRY-FREE LID**

If it flies off the high chair, or flips upside down in your purse, Thermos Foogo® products keep liquids where they belong.

*See* "Better Fresh Than Sorry," *available at* http://www.thermos.com/foogo.aspx, last visited October 2, 2013.

28.    Similar claims are made on other websites where the Bottles are sold, including Amazon.com, where the Bottles are described as follows:

Kid proof design:   unbreakable stainless steel interior and exterior inhibits bacteria growth; ***leak proof valve prevents messes*** and is easy to clean.

Featuring an easy-grip contoured body and a soft, durable silicone straw, this bottle makes sipping clean, easy, and fun.   The hygienic, pop-up straw opens easily with a push of a button and ***is completely leak-proof***.

*See, e.g.*, "Thermos Foogo Phases Leak Proof Stainless Steel Straw Bottle, 10 Ounce," *available at*   http://www.amazon.com/Thermos-Phases-Stainless-Bottle-Purple/dp/B002UJGK1C#product Details, last visited October 2, 2013 (emphasis added).

29. Defendant's in-store advertising is essentially identical and equally deceptive. Every Bottle available for purchase is displayed in the store with a "hang-tag." A hang-tag is a cardboard tag affixed to the top and body of the Bottle. The hang-tags for the Bottles contain a symbol depicting a drop of water with a line through it, indicating that the Bottles are purportedly "leak-proof."

30. Further, the Plastic Bottles' hang-tags' have a large circular area in the upper right corner advertising the Bottles' "Leak-Proof Straw Lid."

31. Finally, the Plastic Bottles' hang-tags advertise as a "Product Feature," the Bottles' "Leak-Proof hygienic push-button lid," and the Vacuum-Insulated Bottles' hang-tags advertise that the "Push-Button lid is leak-proof and hygienic."

32. Thus, the overall consistent message of the advertising – whether online or in-store – is that these products are "leak-proof."

33. By advertising the Bottles as "leak-proof," Defendant is able to price the Bottles at a premium to other similar non-"leak-proof" children's bottles. While the Vacuum Insulated Bottle retails for $14.99 to $16.99 and the Plastic Bottle retails for $6.00 to $9.99, similar non-"leak-proof" stainless steel bottles retail for as little as $7.59 (*see, e.g.*, Sub Zero Stainless Bottle, *available at* http://www.kmart.com/sub-zero-stainless-bottle-black-750ml/p089W017474090001 P (last visited October 2, 2013)), and similar children's non-"leak-proof" plastic straw bottles retail for as little $2.50 or less (*see, e.g.*, Essential Home Butterfly Straw Cup, *available at* http://www.kmart.com/essential-home-butterflystrawcup/p011W029084440001P?prdNo=1& blockNo=1&blockType=G1 (last visited October 2, 2013)).

34. This is further evidence that the supposed "leak-proof" nature of the Bottles is a material factor in a consumer's decision to purchase the Bottles.

*The "Leak-Proof" Bottles Are Not "Leak-Proof"*

35.    As Plaintiffs and other members of the Class discovered after purchasing the Bottles, they are anything but "leak-proof."   Indeed, when the Bottles are inverted or shaken, liquid escapes from both: (i) the straw, and (ii) the gap between the straw and part of the lid surrounding the straw.  If a young child shakes, throws or drops a Bottle – as young children are wont to do – liquid will be released from the mouth of the straw ***and*** from the gap between the straw and the lid.

36.    Further, because the "hygienic push-button lid" is so large and so easily triggered, the lid covering the Bottles regularly pops open unintentionally.  For example, if a Bottle is being stored in a diaper bag and another item in the diaper bag grazes the push-button lid, the lid will immediately pop open, exposing the straw, which in turn leaks liquid.

37.    Numerous purchasers of the Bottles have voiced their dismay with Defendant's deceptive advertising after realizing that the "leak-proof" Bottles actually leak.

38.    For example, countless purchasers have provided negative or less-than-stellar reviews on Amazon.com.  A sample of such reviews appears below:

> 1.0 out of 5 stars **last less than 1 year**, May 22, 2013
> By smiling angel
> This review is from: Thermos Foogo Phases Leak Proof Stainless Steel Straw Bottle, Blue/Yellow, 10 Ounce (Baby Product)
> At the very beginning we were looking for a straw bottle to keep the juice cold for our 1-year-old. But it turned out that she can't get used to straw until recent, when she is 2 1/2-year-old. So literally we only started using it about 2 months ago. However we began to see sticky juice everywhere. ***Then finally we found out there is a leakage that could not be stopped no matter how tight the screw cap is.***
> SO IF YOU WANT A DURABLE BOTTLE FOR YOUR BABY, IT IS NOT THE ONE!
>
> …
>
> 1.0 out of 5 stars **Leaks**, April 2, 2012
> By ahs

This review is from: Thermos Foogo Phases Leak Proof Stainless Steel Straw Bottle, Pink/Purple, 10 Ounce (Baby Product)
After I received this cup I filled it with water and tipped it upside to see if it would leak and *it immediately began leaking*. Not worth the price sending it back!!!

….

1.0 out of 5 stars **Leaks like crazy!,** July 24, 2011
By L. Scott (Mountain View, Ca) - See all my reviews
This review is from: Thermos Foogo Phases Leak Proof Stainless Steel Straw Bottle, Blue/Yellow, 10 Ounce (Baby Product)
*I don't know how they can call this cup leak proof. Mine leaks constantly. I even bought a second one thinking that maybe the first one I had was defective. Unfortunately now I have two cups that leak. And it's not just from the top of the straw- the base of the straw leaks. When you tighten the lid the straw twists and therefore creates a hole where the straw comes out of the lid, and milk is constantly dripping out of there.* My 16-month- old son uses this cup and of course drops it at will, so I am constantly cleaning up puddles of milk, especially if I don't catch it right away…

*See* Amazon.com Customer Reviews of Thermos Foogo Phases Leak Proof Stainless Steel Straw Bottle, *available at* http://www.amazon.com/Thermos-Phases-Stainless-Bottle-Yellow/product-reviews/B00318CO6G/ref=cm_cr_pr_top_filter_1_star?ie=UTF8&filterBy=addOneStar&showViewpoints=0&sortBy=byRankDescending (last visited October 2, 2013) (emphasis added).

39.     Defendant's deceptive claims regarding the "leak-proof" nature of the Bottles appear on Defendant's website, in Defendant's advertising, and on every single Bottle sold. Bottles are available for sale on Defendant's website, on numerous other websites, and in stores throughout the States of New York and New Jersey and throughout the United States.

*Facts Specific to Plaintiff Jenny Milman*

40.     On or about February 3, 2013, Plaintiff Jenny Milman conducted an internet search for leak-proof or spill-proof baby bottles. She was hoping to find a bottle that her son, who was approximately one year old at that time, would be able to use without spilling.

41.     As a result of her internet search, Ms. Milman found the Foogo[®] Leak-Proof Vacuum-Insulated Straw Bottle (also referenced on the Amazon website as the Thermos Foogo[®]

Phases Leak-Proof Stainless Steel Straw Bottle) available for sale at Amazon.com. The Bottle was advertised as being "completely leak-proof." Because the Bottle was advertised as being "completely leak-proof," Ms. Milman purchased the Bottle via Amazon.com at the price of $16.99, and the Bottle was delivered to her home several days later.

42. On or about February 22, 2013, Ms. Milman, having not yet noticed that the Bottle was not "leak-proof" as advertised, purchased another Vacuum Insulated Bottle, at the price of $16.93, as well as two Plastic Bottles, at the price of $6.00 per Bottle. These purchases were also made via Amazon.com. Again, Ms. Milman purchased these Bottles because she wanted "leak-proof" bottles for her child, and the Bottles were advertised as "completely leak-proof."

43. If the Bottles had not been advertised as being "leak-proof," Ms. Milman either would not have purchased any of the Bottles, or she would not have paid as much as she did for the Bottles.

44. Within a few weeks after the second order of Bottles was delivered, Ms. Milman noticed that none of the Bottles was actually "leak-proof," as advertised. When Ms. Milman's infant son would turn a Bottle upside down or shake it, liquid would escape both from the gap between the straw and the lid *and* from the straw itself – *i.e.*, the Bottle would leak.

45. Ms. Milman also noticed that the Bottles would leak if placed in a diaper bag. The button on the "push-button lid" is easily triggered, and the Bottles' lids would pop open, exposing the leak between the straw and the lid and the leaking straw, and thus soaking the other items in the diaper bag with liquid. In fact, at times the Bottles would leak so much from the gap between the straw and the lid that liquid would escape even when the "push-button lid" was closed.

46.     Thus, like the other members of the Class, Ms. Milman suffered an ascertainable loss as a result of Defendant's material deceptive claims regarding the supposed "leak-proof" quality of the Bottles.

***Facts Specific to Plaintiff Ellen Thomas***

47.     On or about June 6, 2011, Plaintiff Ellen Thomas conducted an internet search for "leak-proof" or "spill-proof" baby bottles.  She, too, was hoping to find a bottle that her son, who was also approximately one year old at that time, would be able to use without spilling.

48.     As a result of her internet search, Ms. Thomas found the Foogo® Leak-Proof Vacuum-Insulated Straw Bottle (also referenced on Amazon.com as the Thermos Foogo® Phases Leak-Proof Stainless Steel Straw Bottle) available for sale at Amazon.com.  The Bottle was advertised as being "completely leak-proof."   Because the Bottle was advertised as being "completely leak-proof," Ms. Thomas purchased two Bottles via Amazon.com at the price of $14.99 per Bottle, and the Bottles were delivered to her home several days later.

49.     If the Bottles had not been advertised as being "leak-proof," Ms. Thomas either would not have purchased the Bottles, or she would not have paid as much as she did for the Bottles.

50.     Shortly after the Bottles were delivered, Ms. Thomas noticed that neither of the Bottles was actually "leak-proof," as advertised.  When Ms. Thomas's infant son would turn a Bottle upside down or shake it, liquid would escape both from the gap between the straw and the lid *and* from the straw itself – *i.e.*, the Bottle would leak.

51.     Ms. Thomas also noticed that the "push-button lid" is easily triggered, and the Bottles' lids would pop open, exposing the leak between the straw and the lid and the leaking straw.

52.     Thus, like the other members of the Class, Ms. Thomas suffered an ascertainable loss as a result of Defendant's material deceptive claims regarding the supposed "leak-proof" quality of the Bottles.

### CLASS DEFINITION AND ALLEGATIONS

53.     Plaintiffs bring this action on behalf of themselves and on behalf of the following classes of purchasers of the Bottles (sometimes collectively referred to as the "Class"):

(a) the "New Jersey Class": all persons who purchased one or more of Defendant's Foogo® Vacuum Insulated Leak-Proof Straw Bottles and/or Foogo® Plastic Leak-Proof Straw Bottles in the State of New Jersey; and

(b)  the "New York Class": all persons who purchased one or more of Defendant's Foogo® Vacuum Insulated Leak-Proof Straw Bottles and/or Foogo® Plastic Leak-Proof Straw Bottles in the State of New York.

54.     Excluded from the Class are Defendant and its officers, directors and employees and those who purchased a Foogo® Vacuum Insulated Leak-Proof Straw Bottle and/or a Foogo® Plastic Leak-Proof Straw Bottle for the purpose of resale or who assert claims for personal injury.  Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

55.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure 23 ("Rule 23"), insofar as the Class meets all the requirements of Rule 23:

a.     ***Numerosity***:   The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Class contains thousands of purchasers of the Bottles who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiffs.  While the precise number of Class members and their addresses is presently unknown to Plaintiffs, that

information is known to Defendant or is otherwise discoverable, and thus those Class members may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice.

        b.     ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. Common questions of law and fact include, but are not limited to, the following:

        i.     Whether Defendant's claims about the Bottles discussed above are true, or are reasonably likely to deceive;

        ii.     Whether the alleged conduct constitutes violation of the New Jersey Consumer Fraud Act;

        iii.     Whether the alleged conduct constitutes violation of New York General Business Law § 349;

        iv.     Whether the alleged conduct constitutes a breach of the express warranty which exists between Defendant and Plaintiffs and other members of the Class;

        v.     Whether the alleged conduct constitutes unjust enrichment;

        vi.     Whether Defendant engaged in deceptive advertising;

        vii.     Whether Defendant knowingly made material deceptive claims regarding the leak-proof nature of the Bottles;

        viii.     Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

        ix.     Whether Plaintiffs and Class members are entitled to injunctive relief.

      c.     **_Typicality_:** Plaintiffs' claims are typical of the claims of the other members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, and all Class members were subject to Defendant's deceptive statements, including deceptive claims that accompanied each and every Bottle sold. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

      d.     **_Adequacy of Representation_:** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

      e.     **_Superiority_:** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them by Defendant. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding and presents no unusual management difficulties under the circumstances here.

      56.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members. Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

## NOTICE TO ATTORNEY GENERAL OF ACTION

57.     Pursuant to N.J. Stat. Ann. § 56:8-20, a copy of this Complaint has been mailed to

the Attorney General within ten days of the filing of the Complaint.

## COUNT I

### Violation of New Jersey Consumer Fraud Act

58.     Plaintiff Milman repeats and realleges the allegations contained in Paragraphs 1

through 57 above, as if set forth fully herein.

59.     Plaintiff Milman brings this claim individually and on behalf of the New Jersey

Class.

60.     The New Jersey Consumer Fraud Act ("CFA") was enacted and designed to

protect consumers against unfair, deceptive and fraudulent business practices.  N.J. Stat. Ann. §

56:8-1 *et seq*.

61.     N.J. Stat. Ann. § 56:8-2 provides:

The act, use or employment by any person of any unconscionable commercial
practice, deception, fraud, false pretense, false promise, misrepresentation, or the
knowing, concealment, suppression, or omission of any material fact with intent
that others rely upon such concealment, suppression or omission, in connection
with the sale or advertisement of any merchandise or real estate, or with the
subsequent performance of such person as aforesaid, whether or not any person
has in fact been misled, deceived or damaged thereby, is declared to be an
unlawful practice…

62.     Plaintiff Milman, other members of the New Jersey Class, and Defendant are

"persons" within the meaning of the CFA.

63.     The Bottles manufactured and sold by Defendant are "merchandise" within the

meaning of the CFA, and Plaintiff and other members of the New Jersey Class are "consumers"

within the meaning of the CFA and thus entitled to the statutory remedies made available in the

CFA.

64.     Defendant, through its advertisements, including its packaging, used unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation in violation of the CFA in connection with the marketing and sale of the Bottles, as alleged above.

65.     Defendant also knowingly concealed, suppressed and consciously omitted material facts to Plaintiff Milman and other members of the New Jersey Class knowing that consumers would rely on the advertisements and packaging to purchase the Bottles.

66.     The misrepresentations and omissions were material and were intended to, and likely to, deceive a reasonable consumer.

67.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiff Milman and other members of the New Jersey Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Bottles, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, any other statutory damages, attorneys' fees and costs of suit.

68.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

69.     Plaintiff Milman also seeks a permanent injunction prohibiting Defendant from continuing to engage in the deceptive acts set forth above.

## COUNT II

### Violation of New York General Business Law § 349

70.     Plaintiff Thomas repeats and realleges the allegations contained in Paragraphs 1 through 57 above, as if set forth fully herein.

71. Plaintiff Thomas brings this claim individually and on behalf of the New York Class.

72. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce" in New York state.

73. The conduct of Defendant alleged herein violates General Business Law § 349 in that Defendant's representations and claims, in its advertising and on the packaging of the Bottles, lead consumers such as Plaintiff Thomas and the New York Class to believe that the Bottles are "leak-proof," while in actuality the Bottles are not leak-proof, and are in fact prone to leaks. Such conduct is inherently and materially deceptive and misleading in a material respect because Defendant knew or should have known that the Bottles are not leak-proof, and thus knew or should have known that its statements were materially misleading and deceptive.

74. The materially misleading conduct of Defendant alleged herein was directed at the public at large.

75. Defendant's acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances.

76. Defendant's deceptive and misleading acts are a willing and knowing violation of General Business Law § 349 because Defendant knew, or should have known, that its claims and representations regarding the supposedly "leak-proof" nature of the Bottles were false and misleading.

77. As a result of Defendant's deceptive and misleading acts, Plaintiff Thomas and the New York Class have been injured as alleged herein in amounts to be proven at trial because they purchased one or more of the Bottles because they saw that the Bottles were advertised as "leak-proof." Had Plaintiff Thomas or the New York Class known that the Bottles were not

actually leak-proof, they either would not have purchased the Bottles or would not have paid the price they paid for the Bottles.

78.     As a result, pursuant to General Business Law § 349, Plaintiff Thomas and the other members of the New York Class are entitled to maintain an action against Defendant for actual or statutory damages to be determined at trial, but not less than $50.00 per Class member, such damages to be trebled, plus attorneys' fees, costs, and injunctive relief prohibiting Defendant from continuing to engage in the deceptive acts set forth above.

## COUNT III

### Breach of Express Warranty

79.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 57 above, as if set forth fully herein.

80.     Plaintiffs bring this claim individually and on behalf of the Class.

81.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased their Bottles.  The terms of that contract include the promises and affirmations of fact made by Defendant on the Bottles' packaging and through marketing and advertising, as described above.  This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and the members of the Class and Defendant.

82.     Defendant purports through its advertising and packaging to create express warranties that the Bottles are "leak-proof."  Plaintiffs and the Class relied on these express warranties as being a part of the bargain between the parties.

83.     All conditions precedent to Defendant's liability under the contract have been performed by Plaintiff and the Class.

84. Defendant breached express warranties about the Bottles' "leak-proof" nature because Defendant's statements about the Bottles were false and the Bottles do not conform to Defendant's affirmations and promises described above. Plaintiffs would not have purchased the Bottles, or would not have paid as much as they did for the Bottles, had they known the true nature of the Bottles – namely, that the Bottle are, in reality, highly susceptible to leaks.

85. As a result of Defendant's breach of its express warranties, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Bottles they purchased and any consequential damages resulting from the purchases.

**COUNT IV**

**Unjust Enrichment**

86. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 57 above, as if set forth fully herein.

87. Plaintiffs bring this claim individually and on behalf of the Class.

88. Plaintiffs and the Class members conferred a benefit on Defendant by purchasing the Bottles.

89. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class members' purchases of the Bottles, which retention of such revenues under these circumstances is unjust and inequitable because Defendant misrepresented, through advertising and marketing, that the Bottles were leak-proof while in reality the Bottles are prone to leaks, which caused injuries to Plaintiffs and the Class because they would not have purchased the Bottles, or would not have paid as much as they did for the Bottles, if the true facts concerning the Bottles had been known.

90.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class as the result of its deceptive marketing and advertising practices.   Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class.

91.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment:

A.     Certifying the Class as requested herein;

B.     Appointing Plaintiffs as Class representatives and their undersigned counsel as Class counsel;

C.     Awarding Plaintiffs and the proposed Class members damages;

D.     Awarding statutory damages, including treble damages, to the extent available;

E.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

F.     Awarding injunctive relief as permitted by equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

G.     Ordering Defendant to engage in a corrective advertising campaign;

H.     Awarding attorneys' fees and costs; and

I.      Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: October 29, 2013

_/s/ Theodore B. Bell____
Theodore B. Bell
Patrick Moran
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
55 West Monroe Street
Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001
bell@whafh.com
moran@whafh.com

Janine L. Pollack
Lydia A. Keaney
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
pollack@whafh.com
keaney@whafh.com

Lee S. Shalov
**MCLAUGHLIN & STERN LLP**
260 Madison Avenue
New York, New York 10016
Tel: (646) 278-4298
Fax: (212) 448-0066
lshalov@mclaughlinstern.com

Brett D. Zinner
**ROSENBERG FORTUNA &
  LAITMAN LLP**
666 Old Country Road, Suite 810
Garden City, New York 11530
Tel: (516) 228-6666
Fax: (516) 228-6672
brett@rfllaw.com

/730181