```
                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION

JENNY MILMAN and ELLEN THOMAS,       )Docket No. 1:13-CV-7750
on Behalf of Themselves and All      )
Others Similarly Situated,           )
                                     )
                  Plaintiffs,        ) Chicago, Illinois
                                     ) April 23, 2014
         v.                          ) 9:17 a.m.
                                     )
THERMOS, LLC,                        )
                                     )
                  Defendant.         )


             TRANSCRIPT OF PROCEEDINGS - Ruling
        BEFORE THE HONORABLE REBECCA R. PALLMEYER


APPEARANCES:


For the Plaintiffs:   WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ,
                      LLC, by
                      MR. THEODORE B. BELL
                      MS. JANINE L. POLLACK
                      55 West Monroe Street, Suite 1111
                      Chicago, IL 60603
                      (312) 984-0000


For the Defendant:    SCHIFF HARDIN LLP by
                      MR. JOSEPH A. CANCILA, JR.
                      233 South Wacker Drive, Suite 6600
                      Chicago, IL 60606
                      (312) 258-5500


Court Reporter:       LISA H. BREITER, CSR, RPR, CRR
                      Contract Court Reporter
                      219 S. Dearborn Street, Room 1432
                      Chicago, IL 60604
                      (630) 885-0455
                      lisabreiter@comcast.net
```

>         THE CLERK:  13 C 7750, Milman vs. Thermos for a ruling.
>
>         MR. BELL:  Good morning, your Honor, Theodore Bell on behalf of the plaintiffs.
>
>         THE COURT:  Good morning, Mr. Bell.
>
>         MS. POLLACK:  Good morning, your Honor, Janine Pollack on behalf of the plaintiffs.
>
>         THE COURT:  Good morning, Ms. Pollack.
>
>         MR. CANCILA:  Good morning, your Honor, Joe Cancila on behalf of the defendant.
>
>         THE COURT:  Okay.  Good morning, Mr. Cancila.  We're here on defendant's motion to dismiss the complaint.  The claim here is that defendant has marketed its bottles, its Thermos bottles for children as leakproof, but that they actually leak and that this supports claims under a number of theories.  The defendant has motioned to dismiss them all.
>
>         One of the central arguments in response to the substantive claim is that a disclosure in a document that appears that it's sold with the bottle makes clear that the leakproof feature of the bottle is active only when the bottle itself is in a closed and locked position.  And defendant believes that that disclosure defeats the plaintiffs' claims.
>
>         I'm less certain and here's why:  The plaintiff has alleged, as I understand it, among other things, that the bottle leaks when it's tipped over or when the bottle is open.

1   And defendant says yes, that's correct, but if it's closed and
2   locked, it doesn't leak.  Plaintiff has also alleged, however,
3   not only that it leaks in all positions, but also that it is
4   created or manufactured in such a way that when placed in a
5   diaper bag or a toy bag and brushed up against gently, the
6   button that activates the pop open of the lid can be activated
7   resulting in a leak.  And I think in fairness, the way that the
8   bottle is allegedly marketed suggests that a parent can be
9   confident that that kind of thing won't happen.
10          Now, it's true that there's disclosure in a document
11  that, as I understand it, appears in the bottle itself, is a
12  slip of paper in the bottle itself when it's sold.  And it also
13  appears on the website, the defendant tells us.  But we're
14  talking about a very small disclosure in that document and one
15  that I think could be interpreted in a variety of ways that
16  would be consistent with the plaintiffs' claims.
17          In any event, the Court is really uncertain that it's
18  fair to consider that document on a motion to dismiss.  It's
19  true that the plaintiff -- that the plaintiff has identified
20  other -- for example, the internet advertisement, but I don't
21  think the fact that the plaintiff has identified that material
22  in their complaint opens the door to any consideration by the
23  Court of any promotional material or other documents that the
24  defendant has.
25          I think that the 12(b)(6) standard applies to preclude

such consideration of anything that's not referenced directly or indirectly by the plaintiff. And this other document is not referenced directly or indirectly by the plaintiff. What that means is that it may be that the document in question is going to be relevant on a motion for summary judgment or maybe even a motion for judgment on the pleadings if there's an affirmative defense that can be asserted. But at least at this point when we're looking only at the allegations of the complaint, I think they're adequate to state a claim for a breach.

Now, there's an argument that the breach of warranty claim has to be dismissed because there wasn't appropriate notice to the defendant. There's also a claim that there's no -- there's an argument that there's no claim of unjust enrichment and no basis for injunctive relief here.

With respect to the claim of unjust enrichment, the argument is that the defendant itself wasn't unjustly enriched by the plaintiffs' purchase of the bottles in question because they were purchased from a third party. But I presume that Amazon, or whoever it was that the plaintiffs purchased the bottle from, had itself to pay for the bottle when it was provided or would have -- would not be simply a conduit for defendant's sales.

So what that means to me is that defendant is enriched to the extent that plaintiffs' purchase via Amazon or any other dealer redounds to the benefit ultimately of the manufacturer

1  or the provider of this product. It wouldn't make any sense
2  that it was provided by Amazon and that that had no benefit at
3  all to the defendant.
4          The argument about the notice that's required under
5  some interpretations of New Jersey and I think New York law is
6  one that I need to consider. But I wonder, given whatever the
7  statute of limitations might be, whether it would be fair to
8  characterize the plaintiffs' complaint itself as the notice, to
9  refile -- simply to refile, whether that would resolve that
10 problem even if the plaintiffs are wrong in arguing that it's
11 not applicable. In other words, that strikes me as kind of a
12 form over substance argument at this point.
13         MR. CANCILA: May I address?
14         THE COURT: Sure.
15         MR. CANCILA: I think it's not so much form over
16 substance to the extent that the notice gives an opportunity to
17 the defendant to actually cure the asserted breach of warranty.
18 So it's not solely a formalistic requirement, but also an
19 opportunity to address the specific concern of the specific
20 consumer that has given the notice.
21         THE COURT: True. But it's your position that there
22 is no breach. I mean, you're not saying, "Oh, my goodness, we
23 didn't realize that happened. Let us fix it." If you are
24 saying that, we've got a different case on our hands. I
25 understood you to be saying this product performs exactly as

1   it's supposed to perform.
2          MR. CANCILA:  Well, if a notice were furnished of a
3   disappointed consumer regardless of whether there would have
4   been any acknowledgment of the theory, I don't think we would
5   acknowledge the theory, no.  But in the instance of a notice by
6   a consumer of a problem with the product, Thermos stands behind
7   the product and replaces a product if the consumer has an issue
8   with it.
9          So in that sense the notice would have provided an
10  opportunity to either provide a new bottle that would satisfy
11  the customer or refund the money.  But if that had happened,
12  then that possibility was there.
13         THE COURT:  The refund is something I hadn't thought
14  about.  With respect to replacement of the product, again, I
15  understand it's your position that the product is fine, so a
16  replacement would presumably not satisfy the plaintiffs.  Maybe
17  I'm wrong on that.  Maybe the plaintiffs would be happy with a
18  new bottle, but I understood their concern to be that this
19  bottle didn't function the way -- as they understood it would
20  function.
21         MR. CANCILA:  Right. And I understand what your Honor
22  is saying in respect to replacement, and that may well not
23  satisfy a specific customer giving the required presuit notice.
24         But, you know, a refund, that could have been provided
25  had notice been submitted in advance of a lawsuit would have

1  cured the issue, and that's another element of why a presuit
2  notice is required under the UCC.
3      THE COURT: Response on the presuit notice issue?
4      MS. POLLACK: Yes, your Honor. We think that the case
5  law supports our position. In fact, in the *Strzakowlski* case
6  in the District of New Jersey, there's a very fulsome
7  discussion about the New Jersey Supreme Court's ruling in
8  *Santore*, which really interpreted a pre-UCC statute, but it was
9  the precursor one. And it said that, "No notice is required if
10 it's against a remote manufacturer."
11     In fact, in the *Strzakowlski* case, the Court talks
12 about Section 2-607 of the UCC in Comment 4. And they say,
13 "The purpose of the notice is to settle the case." And that
14 can happen during litigation. In fact, that's when it usually
15 does happen. So it's not inconsistent with having filed the
16 complaint, having that be the notice, and then proceeding to
17 discuss the settlement, if that is a possibility.
18     We think that that is the import of the law, and the
19 Court is absolutely correct in saying that, you know,
20 replacement of the bottle would be yet another leaky bottle.
21 And there's many, many people on the internet on the websites
22 that are saying these bottles leak. So in a sense, they did
23 have notice, not particularly from our client posting, but from
24 many other people posting.
25     And their contention is that the bottle performs

1  exactly as it's supposed to.  Well, our plaintiffs and others
2  contend that it doesn't perform as it's supposed to, and it has
3  inherent design flaws that will be present in every bottle.  So
4  I think that there is -- what the Court was saying is that it
5  wouldn't have really cured the problem because, you know,
6  returning -- giving another bottle wouldn't cure the problem.
7        We think that there is no notice requirement under --
8  especially under New Jersey Supreme Court ruling.  So it
9  wouldn't really matter if they offered a refund because there
10 was no notice required to begin with allowing us to bring our
11 claims.
12       THE COURT:  Anything further on this issue?
13       MR. CANCILA:  Well, we addressed the authority that
14 Ms. Pollack has referred to in our papers.  There has not, as
15 we understand it, been a New Jersey Supreme Court ruling on
16 this issue.  There has, in fact, been other district courts in
17 New Jersey addressing the issue of a presuit, you know,
18 requirement relative to -- even under a remote manufacturer
19 circumstance.
20       The concept that notice would be sufficient by an
21 Amazon complaint about leaking really isn't the variety of
22 notice contemplated under the UCC, particularly when there's --
23 you know, as we submitted and as your Honor is not considering
24 for purposes of the Rule 12(b)(6) motion, the variety of other
25 comments about the performance of the leak -- of the leakproof

1  attribute of an affirmative nature.  So that's really not the
2  variety of notice contemplated.
3           So this is a distinct issue of law that could be
4  addressed relative to a 12(b)(6) motion, and there's no dispute
5  that presuit notice was not provided.
6           THE COURT:  I recognize there's no dispute that
7  presuit notice wasn't provided.  I'm back to questioning
8  whether or not, now that the lawsuit has been filed, it could
9  simply be dismissed and then refiled and the earlier suit would
10 constitute the presuit notice.
11          I'm curious about whether that would function, if the
12 point is that the defendant is entitled to know before a
13 lawsuit is filed that there's a problem with the product.
14          MR. CANCILA:  Well, if a notice had been filed before
15 the lawsuit in the first place, there would have been an
16 opportunity to address the individual numbered plaintiffs'
17 claim.  In this circumstance, if it's refiled as a class
18 notice, I don't really know that that provides the same variety
19 of curing opportunity when it is filed as a class action
20 lawsuit and a motion for class certification.  A placeholder
21 motion for class certification was put on file simultaneous
22 with the filing of the amended complaint.
23          THE COURT:  I guess I'm concerned that this argument
24 means that there could never be a class action for a product
25 defect because we would never be able to establish that every

1    single class member had made the request for a refund, for
2    example.  And the only -- if the representatives had made such
3    a request and had been provided with, for example, a refund or,
4    you know, a substitute bottle, assuming that made them happy,
5    they would then never be able to proceed on behalf of the
6    class.
7            MR. CANCILA:  The named plaintiffs would not, but if
8    the opportunity to cure --
9            THE COURT:  No named plaintiffs would be able to.
10           MR. CANCILA:  A named plaintiff would be able to if a
11   presuit notice was given and if it was not satisfied.  So if
12   the problem was not addressed by the named plaintiff before the
13   filing of the suit and the named plaintiff continued to have an
14   issue, then a lawsuit could be filed, an asserted class action
15   could be filed.
16           At present, all that's before your Honor, of course,
17   is the named plaintiffs' claims themselves, the two named
18   plaintiffs' claims.  And if those folks had given the
19   opportunity to cure, Thermos may or may not have satisfied
20   those named plaintiffs, but they would have given the
21   opportunity to cure.  And they would have passed that
22   procedural threshold that would be required.
23           THE COURT:  But if they had -- let's suppose that they
24   had given presuit notice and Thermos had written them a check
25   for 1679 or whatever it was, they would lose standing to

1  proceed then, right?

2  　　　　　MR. CANCILA:  Yes.

3  　　　　　THE COURT:  Okay.  So now no class action?

4  　　　　　MR. CANCILA:  Unless there's some other disappointed

5  plaintiff out there who was not satisfied with whatever presuit

6  notification may have been given.

7  　　　　　THE COURT:  I think that essentially -- I think that

8  argument essentially defeats any possibility of proceeding by

9  way of a class.  Any named plaintiff would be either bought off

10 or inadequate to represent the class.  I think it would be

11 impossible to proceed.

12 　　　　　I can't believe that the presuit notice requirement is

13 intended to be interpreted in a way that would defeat any class

14 action.  Now, again, this lawsuit was filed.  I think this

15 constitutes notice, and what I can do is require the plaintiffs

16 to file an amended complaint.

17 　　　　　As it is, I am going to grant your motion with respect

18 to injunctive relief because I don't think that this case is

19 about injunctive relief.  I don't think any injunctive relief

20 would benefit the named plaintiffs, who presumably aren't

21 interested in another bottle that leaks, or from your

22 perspective leaks.

23 　　　　　So the motion to dismiss is denied with respect to

24 Counts I through III and granted with respect to the injunction

25 count, which I think is Count IV.  And I'll direct the

1    defendant to answer within 21 days.  Can we set a Rule 16
2    conference for how about May 29th?
3            MR. CANCILA:  Would it be possible to push it one
4    week?
5            THE COURT:  Sure.  If we push it to the following
6    week, it would be Friday, June 6th, if that's all right.
7            MR. CANCILA:  What time would that be?
8            THE COURT:  9:00 o'clock.
9            Would it be worth your while to meet with a magistrate
10   judge about possibly settling the case?
11           MR. CANCILA:  I don't believe so on any kind of class
12   basis, which I assume would be a non-starter.  In terms of the
13   individual claims, you know, yes.
14           THE COURT:  Well, why don't you talk to plaintiffs'
15   counsel, and if they're interested, just let my deputy know.
16   I'm happy to enter a referral.  Judge Finnegan's been very
17   effective.  Thank you.
18           MR. BELL:  Thank you.
19           MS. POLLACK:  Thank you, your Honor.
20        (Concluded at 9:35)

1              C E R T I F I C A T E

2      I certify that the foregoing is a correct transcript of the

3   record of proceedings in the above-entitled matter.

4

5   _/s/ LISA H. BREITER_                          _April 28, 2014_
    LISA H. BREITER, CSR, RPR, CRR
6   Contract Court Reporter